## PEOPLE v. FOREMAN.

INTOXICATING LIQUORS—CRIMINAL LAW—SEARCHES AND SEIZURES—CONSTITUTIONAL LAW—QUESTION FOR JURY.

In a prosecution for violating the liquor law, where it was conceded that the officer searched defendant's grip without a search warrant and without a warrant for his arrest, but the officer claimed that defendant invited him to search the grip, which was denied by defendant, the trial judge should have instructed the jury that said search was illegal under Art. 2, § 10, of the Constitution, unless defendant invited the officer to do so.

Exceptions before judgment from Ottawa; Cross (Orien S.), J.   Submitted April 14, 1922.   (Docket No. 129.)   Decided June 5, 1922.

William Foreman was convicted of violating the liquor law.   Reversed.

*Daniel F. Pagelsen*, for appellant.

*Fred T. Miles*, Prosecuting Attorney, for the people.

On constitutional guaranties against unreasonable searches and seizures as applied to a search for or a seizure of intoxicating liquor, see notes in 3 A. L. R. 1514; 13 A. L. R. 1316.

MOORE, J. The defendant was convicted with having on the 25th day of July, 1921, in his possession a gallon of whisky. Mr. Foreman had stepped off an interurban car in the city of Grand Haven with a grip in his possession. A police officer spoke to him as he got off the car, saying: "Say, Bill, wait a minute, I want to talk to you." The defendant did not stop and the witness followed him into the hotel in the city of Grand Haven, with the result that the officer took from the grip a bottle containing moonshine whisky. The officer had no search warrant and no warrant for the arrest of the defendant. It is the contention of the defendant that the officer had no right to search the grip without a search warrant, and, having no warrant for the arrest of the defendant, the evidence that was given upon the trial of the cause was illegally obtained and in violation of the rights of the defendant. The case is here on exceptions before sentence.

The assignments of error may be grouped under three heads:

(1) Error on the part of the court in denying the motion to quash.

(2) Admission of testimony tending to prove that the contents of the jug were moonshine whisky.

(3) Failure of the court to instruct the jury as requested by the defendant.

The judge was requested to charge the jury as follows:

"I charge you, gentlemen of the jury, that if you find from the evidence in this case that the officer, at the time he made the search of the grip here in question, was not armed with a search warrant, did not have a search warrant authorizing him to search this grip, then you must disregard all of the evidence introduced in this case and your verdict must be not guilty."

In place thereof the court instructed the jury:

"If you find from the evidence in this case and beyond a reasonable doubt that on the 25th day of July, 1921, in the city of Grand Haven, in this county, respondent unlawfully had in his possession certain spirituous and intoxicating liquor, to-wit, a gallon of moonshine whisky, then he is guilty of the offense herein charged against him."

The only witness sworn was the officer who made the arrest. We quote some of his testimony:

"That he first saw Bill that day on the interurban coming into the city of Grand Haven at the Gildner Hotel on the corner of Washington and Water streets. That he had a conversation with him at that time. That Bill got off the front end of the car and witness got off the rear and went to the front and hollered at him saying, 'Say, Bill, wait a minute, I want to talk to you,' and he kept right on, and I caught up to him. I asked him what he had in that grip, and he still continued to walk and he said 'I have clothes in here,' and he walked into the hotel to the foot of the stairs, in the lobby. This was the Gildner hotel. He set his grip down and said, 'I will show you that I have clothes,' opened his grip, took out a shirt, and under that shirt was a piece of cardboard, and I lifted up the cardboard and found that gallon of whisky. This is the piece of cardboard here in court. The shirt was on top.

"Q. When you stopped him in the hotel, he opened the grip and pulled out the shirt and said to you, 'See, that is what I have got,' holding up the shirt, did he not?

"A. He says, 'See, I have clothes.'

"Q. Didn't he say 'See, that is what I have got?'

"A. He says clothes.

"Q. And held up the shirt?

"A. He told me he had clothes.

"Q. But he showed you the shirt, he held up the shirt and says 'See, that is what I have got,' didn't he?

"A. He says, 'See, that is my clothes.'"

The officer was subjected to a long cross-examination and his answers were frequently evasive. He

sought to convey the impression that he was invited by the defendant to search his grip, while it is contended by the appellant that the conversation was not an invitation to search the grip, but was a representation that what the grip contained was defendant's clothes. It is insisted that the Constitution was violated, counsel quoting:

"The person, houses, papers and possessions of every person shall be secure from unreasonable searches and seizures. No warrant to search any place or to seize any person or things shall issue without describing them, nor without probable cause, supported by oath or affirmation." Constitution, art. 2, § 10.

It is conceded there was no search warrant, but it is insisted there was an invitation to search the grip. Some of the cases bearing upon the questions involved are *People* v. *Marxhausen,* 204 Mich. 559 (3 A. L. R. 1505) ; *People* v. *DeLaMater,* 213 Mich. 167; *People* v. *Mayhew,* 214 Mich. 153; *People* v. *Halveksz,* 215 Mich. 136.

The jury should have been instructed by the judge that as the officer had no warrant for the arrest of defendant and no search warrant that he had no right to search the grip unless he was invited to do so, and that in the absence of such invitation they should find the defendant not guilty.

The case is reversed, and a new trial ordered.

Fellows, C. J., and Wiest, McDonald, Clark, Bird, Sharpe, and Steere, JJ., concurred.