## PEOPLE *v*. DE CESARE.

CRIMINAL LAW—INTOXICATING LIQUORS—SEARCHES AND SEIZURES —CONSTITUTIONAL LAW.

> Where a sheriff had reasonable grounds not only to suspect but to believe defendant guilty of having committed a felony in transporting intoxicating liquor illegally in an automobile over the public highways, he had a right to search the automobile while it was standing on a public street in a city in the county of which he was sheriff, and seize the liquor therein contained, although he had no

On the question of constitutional guaranties against unreasonable search and seizure as applied to search for or seizure of intoxicating liquor, see notes in 3 A. L. R. 1514; 13 A. L. R. 1316.

search warrant; said search and seizure, under all the circumstances, not being unreasonable within the meaning of section 10, Art. 2, of the Constitution. FELLOWS, C. J., and WIEST and BIRD, JJ., dissenting.

Exceptions before judgment from Livingston; Collins (Joseph H.), J. Submitted April 14, 1922. (Docket No. 133.) Decided November 2, 1922.

Frank De Cesare was convicted of violating the liquor law. Affirmed.

*F. J. Shields* and *Alex. S. Montague* (*Anthony Maiullo*, of counsel), for appellant.

*Merlin Wiley*, Attorney General, and *Glenn C. Yelland*, Prosecuting Attorney, for the people.

BIRD, J. (*dissenting*). Defendant drove into Howell with a Packard automobile and stopped at the curb. He had been there only a short time when the sheriff of Livingston county came to the car and demanded admittance. After defendant learned of him who he was he was admitted. The sheriff inquired what he had in the suit cases which were in the car. Defendant made no reply, whereupon the sheriff attempted to open one but found it locked. He broke it open and found it contained several bottles of whisky. He then arrested defendant and took him to jail. In the justice's court, and afterwards in the circuit court, defendant, through his counsel, applied for an order directing the return of the liquor to him on the theory that it was illegally seized, but both applications were denied. The liquor was admitted in evidence on the trial against defendant's objection. Defendant assigns several errors in this court, the important one being that his constitutional rights were invaded by search of his car and the breaking open of his suit cases

without the authority of a search warrant. The constitutional provisions relied upon are:

"The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U. S. Constitution, 4th Amendment.

"The person, houses, papers and possessions of every person shall be secure from unreasonable searches and seizures. No warrant to search any place or to seize any person or things shall issue without describing them, nor without probable cause, supported by oath or affirmation." Michigan Constitution, art. 2, § 10.

"No warrant shall be issued to search a private dwelling occupied as such, unless some part of it is used as a store or shop, hotel or boarding house, or for any other purpose than a private residence, or unless such private dwelling is a place of public resort." * * * Act No. 336, Pub. Acts 1921, § 30.

Ruling Case Law has this to say upon the scope and meaning of these constitutional provisions:

"An unreasonable search is an examination or inspection without authority of law of one's premises or person, with a view to the discovery of stolen, contraband or illicit property, or for some evidence of guilt, to be used in the prosecution of a criminal action. The right of individuals to be exempt from such searches is guaranteed by the 4th Amendment to the Constitution of the United States, and such amendment is incorporated generally in the constitutions of the several States. These provisions apply to all invasions on the part of the government and its employees, of the sanctity of a man's home and the privacies of life. *It is not the breaking of his doors and the rummaging of his drawers that constitute the essence of the offense; but it is the invasion of his indefeasible right of personal security, personal liberty, and private prop-*

*erty, where that right has never been forfeited by his conviction of some public offense.*  \*   \*   \*

"*The violation of the right to be secure in one's home does not require actual entry on the premises and a search for and the seizure of property, in order to constitute it an unreasonable search and seizure.*"    24 R. C. L. pp. 717-719.

It will be noted that the legislative provision deals only with private dwellings.    It is not as broad as the constitutional provision.    This deals with and seeks to protect against unreasonable searches of the person, houses, papers, as well as possessions.    This Packard car was defendant's possession.    The suit cases were private baggage of defendant and clearly came within the constitutional provision.    If the sheriff had the right to do what he did, he would have had the same right to follow the car into the garage in the rear of defendant's private dwelling and there make a search and seizure.    Had the suit cases contained defendant's private papers, it would hardly be contended that the sheriff would have had a right to break them open and examine the contents.    The constitutional provision seeks to protect one's possessions as well as his dwelling against invasions of this character.    *Youman* v. *Commonwealth*, 189 Ky. 152 (224 S. W. 860), cited with approval in *People* v. *Margelis*, 217 Mich. 423.    The case of *Town of Blacksburg* v. *Beam,* 104 S. C. 146 (88 S. E. 441, L. R. A. 1916E, 714), supports this view.    The facts in that case were that:

"The defendant is a young, white farmer, and lives near Kings Creek, a few miles out from Blacksburg. He had been to Union court house where he bought whisky from a dispensary; he put the liquor in his trunk, and checked the trunk to Blacksburg, where he disembarked from the railroad cars, bought a ticket to Kings Creek (towards York), and had his trunk re-checked to that place.    Pending his passage from one line of railroad to another, the chief of police at

Blacksburg, without any process, searched the defendant's person, got therefrom his trunk key, opened the trunk and seized the whisky, arrested and incarcerated defendant," etc.

Beam was found guilty and the case found its way to the supreme court. In disposing of the appeal it was said:

"We have no doubt but that a conviction under the recited circumstances is unlawful. Some things are to be deplored more than the unlawful transportation of whisky; one is the loss of liberty. Common as the event may be, it is a serious thing to arrest a citizen, and it is a more serious thing to search his person; and he who accomplishes it, must do so in conformity with the laws of the land. There are two reasons for this: One to avoid bloodshed, and the other to preserve the liberty of the citizen. Obedience to law is the bond of society, and the officers set to enforce the law are not exempt from its mandates.

"In the instant case the possession of the liquor was the body of the offense; that fact was proven by a forcible and unlawful search of the defendant's person, to secure the veritable key to the offense. It is fundamental that a citizen may not be arrested and have his person searched by force and without process in order to secure testimony against him.  *  *  *  It is better that the guilty shall escape than that another offense shall be committed in the proof of guilt."

If the chief of police had no right to search defendant's trunk while in transit, did the sheriff of Livingston county have the right to demand admittance to the car, and when admitted, break the lock on defendant's private baggage and examine the contents? But the argument is made that the sheriff found the prohibited thing which made defendant guilty of a felony. So did the chief of police find the whisky in the trunk, but he found it by such an invasion of defendant's rights that the court would not approve of it. So with the sheriff in the present case. He had no real knowledge that defendant was trans-

porting liquor and he learned of it only by a clear invasion of defendant's constitutional rights. It will hardly do to say that the sheriff has a right to break open one's private baggage, and if he finds whisky he is justified, and if he does not that he is only liable for a trespass.

This question is treated by the case of *Pickett* v. *State,* 99 Ga. 12 (25 S. E. 608, 59 Am. St. Rep. 226). In that case defendant was indicted for an assault with intent to murder a police officer. The officer had arrested defendant's brother and some person told the officer that the defendant was armed. The officer then went to the defendant and claimed the right to search him. This right the defendant denied, but the officer insisted upon exercising it, and claimed that in so doing he discovered a pistol, after which an altercation followed in which the defendant and the officer, it is claimed, shot at each other. The defendant claimed that he did not have any weapon on his person and did not do any shooting. On the trial the court charged the jury that

"if the defendant had been violating the laws of the State, and the officer had been informed of it, he had a right to arrest the defendant whether he had a warrant or not, and, after the arrest had the right to search defendant and take such weapon as would be calculated to result in harm."

The supreme court, in disposing of this instruction, said:

"While, under section 4723 of the Code, an officer may, without a warrant, make an arrest for an offense committed in his presence, he has no authority, upon bare suspicion or upon mere information derived from others, to arrest a citizen and search his person in order to ascertain whether or not he is carrying a concealed weapon in violation of law. The constitution of this State expressly declares in the bill of rights that:

" 'The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated.' Code, § 5008.

"If any search is unreasonable and obnoxious to our fundamental law, it is one of the kind with which we are now dealing. Even if the person arrested did, in fact, have a pistol concealed about his person, the fact not being discoverable without a search, the offense of thus carrying it was not, in legal contemplation, committed in the presence of the officer, and the latter violated a sacred constitutional right of the citizen in assuming to exercise a pretended authority to search his person in order to expose his suspected criminality."

This case very effectively disposes of the argument of the sheriff in the case under consideration that defendant was committing a felony in his presence and, therefore, he had a right to arrest him. He was not satisfied to confine the searching to his person to see if defendant had any weapons upon him or any evidence of the guilt of the offense involved, but he attacks his private baggage and breaks the lock before he finds evidence of his criminality.

Our own court has recently considered these constitutional provisions. In *People* v. *Marxhausen*, 204 Mich. 559 (3 A. L. R. 1505), it was said:

"By these provisions the rights of the individual are secured; the provisions of the Federal Constitution securing the citizen from arbitrary, unlawful conduct on the part of the Federal government and its officers, and the provisions of the State constitutions securing the citizen from arbitrary, unlawful conduct on the part of the State and its officers. These provisions not only secure the individual in his person, his home, and his property from invasion through unbridled legislation, but they also secure the individual in his person, his home, and his property from invasion through unbridled and unrestrained executive or administrative will. It ought not to be necessary to recall the fact that it is of the essence of a free government that the individual shall be secure in his person,

his home and his property from unlawful invasion, from unlawful search, from unlawful seizure."

The recent case of *People* v. *Foreman*, 218 Mich. 591, appears to be decisive of the present one. In that case the defendant, Foreman, alighted from an interurban car and entered a hotel in Grand Haven and set his suit case on the floor. An officer followed him into the hotel, opened the suit case and found therein a quantity of moonshine whisky. The officer had neither a warrant for Foreman's arrest nor a search warrant. Foreman made the defense that his constitutional rights had been invaded by the officer. The officer insisted that Foreman consented to the search. Foreman was convicted and appealed to this court. After reviewing the case at some length, Mr. Justice MOORE, in reversing the case, said:

"The jury should have been instructed by the judge that as the officer had no warrant for the arrest of defendant and no search warrant that he had no right to search the grip, unless he was invited to do so, and that in the absence of such invitation they should find the defendant not guilty."

The present case is a more grievous one because the sheriff broke the lock of defendant's suit case, whereas in the case cited the suit case was unlocked.

The question involved in the present case is an important one to the people of the State. If we should affirm the action of the lower court, the effect of the decision may be felt by anyone at any time who is driving an automobile over the public highways of this State. It will say, in effect, to the police, you may go out and stop any one of the thousands of automobiles traveling upon the Michigan highways. You may search the car. You may break open the locks on the personal luggage in the car, and be immune whether you find any liquor or not. The tendency of this rule among people who are not advised as to the law will

breed altercations and bloodshed. Besides this, such a construction as this would weaken and destroy the force of our constitutional provision which has served as a protection and shield to the people ever since we became a State. The prohibition law is here and it should be enforced in an orderly and lawful way as other criminal laws are enforced. If it cannot be enforced without trampling under feet one's constitutional rights, it should not be enforced. Cooley on Constitutional Limitations (3d Ed.), p. 348. The prohibition law should be enforced the same as any other offense against our laws is enforced, with a full recognition of the constitutional rights of the citizen. What was said in a very late opinion by the Supreme Court of the United States in *Gouled* v. *United States,* 255 U. S. 298 (41 Sup. Ct. 261), in speaking of the 4th and 5th Amendments to the Constitution, is apropos here:

"It would not be possible to add to the emphasis with which the framers of our Constitution and this court (in *Boyd* v. *United States,* 116 U. S. 616 [6 Sup. Ct. 524]; in *Weeks* v. *United States,* 232 U. S. 383 [34 Sup. Ct. 341, L. R. A. 1915B, 834]; and in *Silverthorne Lumber Co.* v. *United States,* 251 U. S. 385 [40 Sup. Ct. 182]) have declared the importance to political liberty and to the welfare of our country of the due observance of the rights guaranteed under the Constitution by these two amendments. The effect of the decisions cited is: That such rights are declared to be indispensable to the 'full enjoyment of personal security, personal liberty, and private property'; that they are to be regarded as of the very essence of constitutional liberty; and that the guaranty of them is as important and as imperative as are the guaranties of the other fundamental rights of the individual citizen,—the right to trial by jury, to the writ of *habeas corpus,* and to due process of law. It has been repeatedly decided that these amendments should receive a liberal construction, so as to prevent stealthy encroachment upon or 'gradual depreciation' of the rights secured by them, by imperceptible practice of

courts or by well-intentioned but mistakenly over-zealous executive officers."

Our conclusion is that the trial court was in error in admitting the whisky in evidence on the trial. For this error the judgment should be reversed and a new trial ordered.

FELLOWS, C. J., and WIEST, J., concurred with BIRD, J.

WIEST, J. (*dissenting*). I agree with Mr. Justice BIRD, and in support of his opinion cite with approval the following holding of the supreme court of Florida in *Tillman* v. *State*, 81 Fla. 558 (88 South. 377):

"An officer without a search warrant, or warrant of arrest, has no right to stop anyone on the public highway, particularly in the nighttime, and demand that he surrender what he has in his possession, or take it from him without his consent.
"The oath of an officer to support, protect and defend the Constitution precludes his seizing property in violation of any provision of the Constitution that 'the right of the people to be secure in their persons, houses, papers and effects against unreasonable seizures and searches, shall not be violated, and no warrants issued but upon probable cause, supported by oath, or affirmation, particularly describing the place or places to be searched and the person or persons and thing or things to be seized.' "

The constitutional provision against unreasonable searches and seizures places restraint upon police officers and guarantees to the people the right of privacy and security with reference to their houses, papers and possessions. Police officers, under the Constitution, may not so act as to render inoperative any of the constitutional provisions or lessen the security thereby afforded.

FELLOWS, C. J., and BIRD, J., concurred with WIEST, J.

STEERE, J. I am unable to agree with the con-

clusions reached by Justice Bird. The testimony in this case supports a lawful arrest and seizure. When the sheriff went to defendant's car and asked, or demanded, admittance he had reasonable grounds to not only suspect but to believe him guilty of having committed a felony.

"Any constable or sheriff may arrest any person whom he suspects, on reasonable grounds, of having committed a felony, whether in fact a felony has been actually committed or not." Tiffany's Criminal Law, p. 92.

"Actual cause for apprehension is held to be a prerequisite in some cases; that is, a crime committed and reasonable ground to believe that the person sought to be apprehended committed the offense. When these conditions exist, the law clothes any person with power to apprehend and hold the party until a warrant can be obtained; but the better opinion, supported by the weight of authority, is to the effect that an officer may apprehend without a warrant any person whom he has reasonable grounds to suspect has committed a felony, whether any felony has, in fact, been committed by the person apprehended, or by another, or not." 1 Wharton's Criminal Procedure (10th Ed.), p. 71.

There is undisputed testimony in the record, entirely independent of that procured by the sheriff in his search and seizure, that, on December 4, 1920, defendant drove into Howell from Detroit with a quantity of whisky in a Packard car, accompanied by two men named Gray and Johnson, first stopping in front of a restaurant where the two men with him got out of the car and went in, after which the car moved from that locality. Gray, who apparently had some knowledge of names and places in Howell, then started out, accompanied by Johnson, to market some of the liquor and visited a number of places, amongst others Young's meat market, as to which he proved to be laboring under a misapprehension, for he confided to

Young that "he was sent over by Wilson & Pettibone" who thought Young "might buy some of the good stuff he had" which he classified as "genuine whisky." After listening to his proposal Young declined to become a customer and after he was gone lodged a complaint with the sheriff's office. The under-sheriff received the communication and started out to investigate, first going to Young's meat market where he obtained a description of Gray and information that the three men had come into Howell in a Packard car. Failing to find the car where he had been told it was parked, he returned to the jail and told the sheriff what he had learned. They then started out together to find the car or the parties, but were unsuccessful for some time. While they were yet searching, a Packard car was driven past where the under-sheriff stood and a man standing by his side said, "there is that car." He watched it stop and saw one man alight, sent for the sheriff and showed him where it was standing, then followed the man who alighted from the car until he joined Gray whose description he had and they started towards the car, when he arrested them.

The sheriff testified the under-sheriff on his return from Young's informed him "that there were three fellows in town with a Packard car offering booze for sale and had been in the meat market of Mr. Young offering to sell him some," answering in part as follows:

"Q. On direct-examination you stated the only description you had of these men was that there were three men in a Packard car?

"A. Yes.

"Q. On that information you went over and arrested these men?

"A. No.

"Q. What further information did you have?

"A. Under-sheriff, two officers from Corunna.    *    *    *

"*Q.* The information upon which you located this car was merely the fact it was a Packard?

"*A.* No, sir; it was shown to me by under-sheriff and two other fellows."    *    *    *

Redirect:

"*Q.* Can you tell the court what that information was and what it consisted of?

"*A.* They had seen men in Packard car on north Michigan avenue, near Bill Brooks'. It was a 1916 Packard and 7 passenger. Said one man was in the car and two by the side of it when he saw it."

In answer to an inquiry by the court he said of his reason for arresting defendant:

"He was reported to us as selling liquor. We had two complaints. The under-sheriff came to me, told me this man was in town selling liquor, told me where he got his information, and we searched upon the streets for some little time before we found the car. Mr. Teeple (the under-sheriff) found the car first and showed it to me.    *    *    *

"*Q.* Then, as I understand you, at the time you made this arrest of respondent, you had information that led you to believe he had committed a felony?

"*A.* We did."

That defendant was committing a felony upon a public highway in a city within the county of which he was sheriff and complaint had been made to him, is undisputed. The nature and source of information which came to him upon that subject justified him in believing it and apprehending defendant without a warrant, on "reasonable grounds to suspect" him guilty of committing a felony.

It is also urged that the search and seizure was unlawful because made before the arrest, in support of which counsel point out that in concluding his account of that event the sheriff testified as follows in the preliminary examination (returned as a part of the record):

"I asked him for his key. He brought out a key that failed to open these suit cases. Then he commenced to ask me to get in the car, in the back seat, wanted me to get in with him. I told him to open the suit case. He did (not?) do it. I jerked one open, pulled out a quart and said 'I guess that will do, you can consider yourself under arrest.' Got in the car with him, started for the jail."

When he searched the car it was on the street in front of Adams & Linn's store, with the curtain fastened down. He found four suit cases in it, two empty and two containing 20 quarts of whisky. On the trial he testified of the transaction as follows:

"I asked Mr. DeCesare to open up the car. He wanted to know who I was. I told him I was the sheriff. He opened the door. I went in.

"Q. State whether or not you arrested the respondent, at that time?

"A. Yes, sir. * * *

"Q. Upon arresting the respondent, Mr. DeCesare, what did you do then?

"A. Search the car—

"Q. Tell the jury what you did from the time—

"A. I stood right on the side of the car at that time, after I could reach in, I stood on the side of the car and he opened up the back door, I could look through the curtain, I see these suit cases in there. After I opened the door I asked him what he had in those suit cases. He said, 'nothing.' I lifted over the first two, they were both empty. I came to the next one, it was full of something. It was locked. I asked him if he had the key to it. He felt around in his pockets and pulled out a bunch of keys. They wouldn't open it. He was delayed somewhat in opening it. I pulled one of them open, found one of them full of liquor, marked 'Whisky.'

"Q. What did you do after that?

"A. Got into the car, told him to drive around to the jail. * * * He wanted me to take some money and let him go."

Later in his examination he was asked by the court and answered:

"*Q.* As I understand you, you arrested him before you made any search?

"*A.* Yes, sir, arrested him on sight."

With the question squarely put to him he twice testified positively that he made the arrest first. But be that as it may, taking into consideration all the circumstances attending this search and seizure, it was not in contemplation of the language of the Constitution unreasonable or unlawful. This case is controlled in principle by *People v. Chyc,* 219 Mich. 273, and *People v. Case, ante,* 379.

The conviction will stand affirmed.

McDONALD, CLARK, SHARPE, and MOORE, JJ., concurred with STEERE, J.