PEOPLE v. BRENNER.

1. ARREST — JUSTIFICATION FOR ARREST WITHOUT WARRANT — MOTION TO SUPPRESS.

Information given officers from two different sources that defendant was hauling liquor on a certain road and that a truck with a certain license number loaded with liquor followed or piloted by another car of certain make would go through the following morning at or about a certain time, was sufficient to justify the officers in arresting the drivers without a warrant and seizing the liquor in the truck, and therefore motion to suppress the evidence obtained was properly denied.

2. CRIMINAL LAW—TRIAL—INSTRUCTIONS—HARMLESS ERROR.

In a prosecution for violation of the prohibition law, where the testimony was convincing that defendant owned the truck seized while transporting intoxicating liquor, inadvertent reference by the trial judge, in his charge to the jury, to certain testimony as to engine numbers, which had been ordered stricken, was not prejudicial.

3. SAME—ADMISSIONS.

Reference by the trial judge, in his charge to the jury, to the prosecutor's claim of an admission by defendant of ownership of the truck, did not mislead the jury or prejudice the defendant, although admission could only be inferred by defendant's inquiry of the sheriff as to where the latter got his hot tip that defendant was coming through with a load of liquor.

Error to Monroe; Root (Jesse H.), J. Submitted June 14, 1928. (Docket No. 121, Calendar No. 33,658.) Decided July 24, 1928.

George Brenner was convicted of violating the liquor law, and sentenced to imprisonment for not less than 11 nor more than 12 months in the State prison at Jackson. Affirmed.

Constitutional guaranties against unreasonable searches and seizures as applied to search for or seizure of intoxicating liquor, see annotation in 3 A. L. R. 1514; 13 A. L. R. 1316; 27 A. L. R. 709; 39 A. L. R. 811.

*A. H. Woodruff* and *Clayton C. Golden,* for appellant.

*Wilber M. Brucker,* Attorney General, and *Edgar G. Gordon,* Prosecuting Attorney, for the people.

NORTH, J.   On the morning of January 3, 1927, members of the State police force stopped an auto truck on one of the highways of Bedford township, Monroe county, Michigan; and found upon examination that it contained 400 gallons of moonshine whisky. This truck was being driven by Harry Stein, but it is claimed it belonged to George Brenner, the defendant in this case.   Brenner, driving a Studebaker coupé, came up behind the truck immediately after it was stopped, and thereupon both men were arrested. Upon trial by a jury the defendant was convicted and he has brought the case here by writ of error.

Brenner was charged with unlawfully possessing and transporting intoxicating liquors.   At the time of the arrest no complaint had been made against him and no warrant issued.   He asserts that his arrest was illegal; and his right to have this question reviewed has been preserved by the timely making of a motion to suppress and by a motion to direct a verdict of not guilty at the conclusion of the proofs.   The primary question in the case is whether the court should have granted the defendant's motion to suppress.   The people claim that the arrest without a warrant and the search and seizure of the liquor was legal because the officers had such information as justified their determination that there was reasonable cause to believe intoxicating liquor was being unlawfully possessed and transported by the defendant in their presence.   The officer in charge at the time of the arrest testified in part as follows:

"I made this arrest upon advance information.   The information I had was that he (the defendant) was hauling through on Stearn's road every morning with

243—Mich.—44.

liquor and a man here on the street of Monroe told me. * * * they would go through there the next morning, January 3d, some time about 5 o'clock, at daylight with a truck, Michigan (license) 116,077. I found the license 116,077 on this truck. The night of the second there was a man came to the post at South Rockwood street and told me the truck would go through the next morning. He said it would be hauling liquor.

"*Q*. State whether or not these were men whom you had ever known?

"*A*. This one that came to the barracks I had information from before.

"*Q*. Was it of a dependable sort?

"*A*. It was. This man in Monroe I cannot remember of seeing him before, although he called me by name, so he must have known me. * * *

"*Q*. In your advance information did you have any information as to whether this truck would be with another car?

"*A*. I did.

"*Q*. What was that.

"*A*. That it would be followed by a Studebaker. * * * When the truck was seized I was on the running board. We examined it right there; * * * we just looked in to see what was in there."

Relying upon information from two separate sources, one of which had proven on former occasions to have been reliable, these officers found a truck bearing the license number given by their informant, passing along the designated highway at or about the hour specified and followed or piloted by the Studebaker automobile about which they had been told. We are of the opinion that this information was sufficiently definite and dependable to justify the officers in making the arrest without a warrant. It follows that the seizure of the intoxicating liquor was lawful and the motion to suppress was properly denied. *People* v. *De Cesare*, 220 Mich. 417; *People* v. *Bressler*, 223 Mich. 597; *People* v. *Bringardner*, 233 Mich. 449.

The defendant asserts prejudicial error was com-

mitted by the trial court in submitting to the jury for its consideration certain alleged facts which the defendant claims were not sustained by any proof; this having been done in attempting to establish the people's claim that the truck in which the liquor was being transported belonged to the defendant.    Testimony was offered to show that he had purchased this identical truck from Mr. Ray C. Dull, a dealer in automobiles and trucks.    In testifying, this witness and also his brother, Ransom Dull, volunteered some statements as to the contents of certain sales records which records were not made by either of these witnesses. This included a statement as to the number of the original engine which was removed from this truck and also the number of the engine later installed therein.    This testimony was stricken from the record; but notwithstanding it was so stricken it was referred to in the charge of the court as being a part of the proofs upon which the people relied.    This is claimed to have been error and prejudicial to the defendant. We are impressed with the fact that the testimony was positive and not disputed that Mr. Ray C. Dull sold this truck to the defendant and because of nonpayment of part of the purchase price the vendor recovered possession of the truck after the defendant's arrest.    On this phase of the case the proof was so clear that only one conclusion could be reached by the jury.    On account of the convincing character of the competent proof, we think the defendant's rights were not prejudiced by the inadvertent reference of the circuit judge in his charge to the jury to testimony as to the motor numbers which testimony had been stricken from the record.

In arriving at the foregoing conclusion we are mindful that the following is stated in the defendant's brief:

"All this attempted proof of the identity of the transporting truck with the truck purchased by the appellant Brenner was stricken from the record.

\* \* \* Aside from the attempted proof by means of the number of the substituted motor, there was no proof introduced to connect appellant Brenner with the ownership of this truck."

We think defendant's counsel have misconstrued the ruling of the circuit judge; and that instead of striking from the record all the proof tending to show that Brenner had purchased this identical truck from the Dull agency, the ruling only purged the record of the incompetent testimony as to the motor numbers. This left in the record the following testimony of Ray C. Dull:

"I am positive of the sale of a Graham truck to this man (the defendant) \* \* \* the only payment made before January 3d was made by Lubitzky (Brenner)."

Ransom Dull testified:

"I am a brother of Ray C. Dull. I had something to do with the sale of a Graham truck at my brother's place of business for this defendant prior to January 3, 1927. \* \* \* He signed and gave me as his name Nathan Lubitzky. It is the same man seated here and on trial here. The motor was changed on that truck for another motor in our garage. I do not know to my own knowledge what the motor number was that was put in it in exchange. \* \* \* The motor was changed about a month or six weeks before January 3, 1927. I have kept myself acquainted with this fellow and this account to the extent I have testified to.

"Q. (Cross-examination.) What part of your testimony as given is from your own recollection?

"A. The sale of the truck.

"Q. You personally were involved in the sale?

"A. Yes.

"Q. Was there any part of your testimony from personal knowledge?

"A. No, only that I know that the original motor was taken out and it was changed. (Redirect-examination.) The number of the motor that was originally in the car was A-820635. We put in a Dodge motor and it had a Dodge motor upon its return."

The officer, Leslie Maycock, testified:

"I have the motor number of the truck and made a record of it.     It was number A-163688.     It was a Dodge special, I think they are called Graham Bernstein jobs.     I don't know whether that was the original motor or not.     That is the number on the truck when we seized it."

This testimony was undisputed.     We think it left no room for doubting the people's claim that the defendant bought this truck of Mr. Dull.     This being true, his rights could not have been injuriously affected by the reference of the circuit judge to the motor number.

· After a resumé in the charge as to the facts claimed by the people, the circuit judge concluded by saying:

"It is the claim of the people  *  *  *  that those are all the facts and circumstances surrounding his arrest, his admission to the officers of the ownership of the Dodge truck, that all those things irresistibly bring one to the conclusion that this defendant is and was the actual owner and possessor of this intoxicating liquor."

It is claimed that there was no admission by the defendant that he was the owner of the truck.     This is true except that ownership or control may be inferred from the defendant's inquiry of the sheriff as to where he "got the hot tip that he (the defendant) was coming through with a load of liquor."     From a careful reading of the charge we are satisfied that the reference to the prosecutor's claim of an admission of ownership did not mislead the jury or prejudice the defendant.

We have given consideration to other grounds of error set forth in the bill of exceptions including the contention that the circuit judge should have directed a verdict of not guilty because of the lack of proof of the *corpus delicti,* but we find them without merit and

conclude that the record abundantly justified the verdict of the jury.

The judgment of the lower court is affirmed.

FEAD, C. J., and FELLOWS, WIEST, CLARK, MCDONALD, and SHARPE, JJ., concurred.   POTTER, J., did not sit.