PEOPLE *v.* CHYC.

1. ARREST—STATE POLICE PEACE OFFICERS—RIGHT TO ARREST IN-
TOXICATED PERSON WITHOUT WARRANT.

Under section 5, Act No. 26, Pub. Acts 1919, members ,of
the State constabulary, or police, are peace officers, having
all the powers of deputy sheriffs in the execution of
criminal laws, and are specifically given authority to make
arrests without warrant for all violations of the law
committed in their presence and, therefore, a member of
the State police who found defendant intoxicated on a
highway of the State had a right to arrest him without
a warrant.

2. SAME—INTOXICATING LIQUORS—FELONY — REASONABLE GROUNDS
FOR ARREST WITHOUT WARRANT.

Where a member of the State police had reasonable
grounds to believe that defendant and his associates were
guilty of the felonies of unlawful possession and trans-
portation of intoxicating liquors, he had a right to arrest
them without a warrant.

3. INTOXICATING LIQUORS—UNREASONABLE SEARCH AND SEIZURE—
PERMISSION TO SEARCH WITHOUT WARRANT SUFFICIENT—EVI-
DENCE.

Where a member of the State police found defendant in-
toxicated in a public highway in possession of an auto-
mobile, and, in response to the question as to what he
had in the car, defendant told him to look if he wanted
tó know, the liquor found therein was admissible in evi-
dence in a prosecution for violating the liquor law, in
view of defendant's permission, although taken without a
search warrant.

4. CRIMINAL LAW—UNDISPUTED EVIDENCE—DIRECTED VERDICT.

In a prosecution for violating the liquor law, where the
evidence was undisputed and was sufficient to sustain a
conviction, the trial court was not in error in instructing
the jury that while he had no right to tell them that
they must find a verdict of guilty, he had a right to tell
them that he could see no reason why they should not.
219—Mich.—18.

Exceptions before judgment from Jackson; Parkinson (James A.), J.    Submitted January 13, 1922. (Docket No. 167.)    Decided July 20, 1922.

John Chyc was convicted of violating the liquor law.    Affirmed.

*John F. Henigan,* for appellant.

*M. Grove Hatch,* Prosecuting Attorney, and *Arthur W. Wiggins,* Assistant Prosecuting Attorney, for the people.

STEERE, J.    Defendant, John Chyc, was tried and convicted in the Jackson county circuit court of violating the prohibition law under an information containing two counts.    The first charged unlawful possession of a quantity of intoxicating liquor, called moonshine whisky, on January 21, 1921, at Leoni township in said county, and the second charged that at the same time and place he was unlawfully transporting said liquor.    Preceding his trial a motion to quash the information was made and denied.    Upon the trial no testimony was introduced for the defense. Requests for a directed verdict in defendant's favor were denied.    The trial resulted in a verdict of guilty under both counts.    A motion for a new trial was denied and an application for a stay of proceedings granted.    Defendant's counsel properly preserved questions brought here for review by objections, requests and exceptions timely made and taken.

Upon the trial it was shown by uncontradicted testimony that in the evening of January 21, 1921, Corporal White of the State constabulary arrested defendant Chyc in a highway near Michigan Center, Jackson county, where he found him under the influence of liquor, close by a Paige touring car headed towards that village, standing at one side of the

traveled track, with its lights very dim, having on board between 50 and 60 quarts of intoxicating liquor described as moonshine whisky which proved on analysis to contain a percentage of alcohol higher than ordinary mercantile whisky as formerly dealt in.

White, with others of the State constabulary, was then stationed at the city of Jackson. On receipt of a call that evening from Michigan Center, through the turnkey of the Jackson county jail, he went out there in an automobile with a driver and two troopers of the constabulary named LeCompte and Harper, not knowing the cause of the call beyond a complaint of some disturbance. On arriving at Michigan Center they met the man who sent in the call and he accompanied them to a place where loud talking was heard as they approached and they found Chyc in the road by the standing car and two other men, named Lecaski and Jankowski, a short distance further down the road. When the officers came up to where they could see Chyc he was in a kneeling position in the road just getting to his feet, with dirt on his clothing indicating he had been sitting or lying on the ground. As White went up to him he discovered from his odor and conduct that he was intoxicated and asked him if he was drunk, to which he replied "not much," and when twice asked what he was doing answered "nothing." White then took him into custody for being drunk on a public highway and for investigation, while troopers LeCompte and Harper went toward the other men at the rear of the car who had started away, going faster as they were followed up and called upon to stop. Jankowski started to run, jumped through a wire fence and fled into a swamp where he was unsuccessfully followed by Harper. LeCompte caught Lecaski who was an older man and took him back to the car where White was with Chyc. He had a small bottle

of liquor in his pocket which he threw away. When asked what he was doing he also said "nothing," denied he owned the car and said it "belonged to the other fellow." Chyc, when asked, said the car was his. Asked what he had in it, he replied, "If you want to know, look." The officers then looked and found a quantity of liquor in the car in jugs and two unlocked suit cases. White, who was in command, left the car with the liquor in it near there in charge of one of the constabulary, having found it was out of gasoline, and took the two men back with him to Jackson. An under-sheriff then went out with a large auto and towed the Paige car with its cargo of liquor into Jackson. The officers who went out there were in uniform and wearing their badges but had no warrant either for arrest or search. Of the arrest, White testified that he first arrested Chyc for being intoxicated, saying in part:

"When I arrested this man I knew he was drunk. * * * I was going up to investigate and see who they were, and when they started to run I thought they had been doing something, and I wanted to find out. * * * With the other information * * * that I got out there from personal observation it did lead me to suspect there was liquor in the car. * * * After I found the condition of things, I thought a felony had been committed and that was the reason for my searching."

Following the events of that evening the usual legal steps by a complaint, warrant, examination before the committing magistrate, binding over for trial, etc., followed in due course.

Defendant's 16 assignments of error directed in detail to alleged invalidity in the various steps taken resulting in a verdict of conviction condense to the proposition that the arrest and seizure of liquor was illegal because without a warrant or other legal process and in violation of defendant's constitutional

rights, and there was no competent evidence to justify the examining magistrate in holding defendant for trial or to sustain his conviction, because the evidence so obtained by illegal methods could not be used against him, it being said in his counsel's brief:

"Now this case narrows down to the question whether the evidence, that is, the liquor, was unlawfully obtained by the officer. In other words, having no search warrant and having no reason to believe that any felony had been committed that they knew of, or that they had suspicion of, and they having no suspicion that respondent had committed any felony and having no search warrant, did they have a right to search this car and can they use the evidence so obtained against this respondent?"

As a corollary to this counsel insists that the court committed error by in effect passing upon the testimony and directing a verdict of guilty under both counts as follows:

"My judgment is their evidence ought to be taken at its face value. * * * The first, I understand, is for possession, and the second for transportation, but we have to take your verdict, and I have no right to tell you that you must find a verdict of guilty, but I have a right to tell you I can see no reason why you should not."

Thus, as counsel urges, passing upon the credibility of witnesses and advising a verdict of guilty under the second count also, when there was no evidence to cover transportation.

In that connection the court also said:

"In criminal cases the court cannot take from the jury its right to consider the case, but where the evidence is undisputed, the court has the right to advise the jury what the verdict should be unless the jury for some reason apparent on the trial is not able to believe the witnesses. * * * They are not contradicted; nobody disputes a word they say. * * * You may retire and your verdict will be

either 'guilty' or 'not guilty.'  *  *  *  Determine
yourselves whether you need to retire."

The jury starting to retire the court halted them
while an officer was sworn and further instructed them
to specify in their verdict as to each count, concluding:

"The first charges that they had possession and the
second that they transported it.  Say 'guilty under
the first count,' or 'second count,' or 'both,' or 'not
guilty.'  You have the right to say that."

While the officers were not equipped with warrants
and had no ground for belief that any felony had been
committed when they answered the call and went to
Michigan Center, we cannot agree with the contention
of counsel that after arriving at the place where the
arrest was made they had no reason to believe that a
felony had been committed.  On the contrary, what
they ascertained after arriving there furnished ample
ground for believing a felony had been and was being
committed.

Unlawful possession and transportation of liquor
are both made felonies by statute in this State.
Members of the State constabulary, or police, are peace
officers, having by statute all the powers of deputy
sheriffs in the execution of criminal laws, and are
specifically given "authority to make arrests without
warrant for all violations of the law committed in
their presence including laws designed for protection
of the public in the use of the highways of the State."
Act No. 26, Pub. Acts 1919, § 5.  White's right to
arrest Chyc when he found him intoxicated on a high-
way of the State—a misdemeanor committed in his
presence—cannot be questioned.  Unlawful possession
and transportation of intoxicating liquor being felonies
he also had the right to arrest Chyc and his associates
without a warrant if he had reasonable grounds to
believe them guilty of those offenses.  Even in the
*Sarah Way Case,* 41 Mich. 299, cited by defendant

in which her arrest without a warrant for alleged vagrancy in violation of a city ordinance was held illegal the court in the reflections on arrest without warrant said:

"And this has only been recognized in felony, and in breaches of the peace committed in presence of the officer."

In Tiffany's Criminal Law, p. 92, it is said:

"Any constable or sheriff may arrest any person whom he suspects, on reasonable grounds, of having committed a felony, whether in fact a felony has been actually committed or not."

In *Ross* v. *Leggett,* 61 Mich. 445 (1 Am. St. Rep. 608), this court approved of that portion of the charge upon the subject in which it was said:

"That no arrest can be made for a misdemeanor unless by warrant, upon complaint duly made, or by an officer or bystander who actually sees the offense which constitutes the misdemeanor. In the case of felony it is different. There, upon proper information,—such information as would justify a reasonable man in acting upon it,—an arrest may be made without warrant, and by one who does not see the actual commission of the offense."

In the instant case the officers had before them actual facts creating at least probable cause on which to base actual belief of Chyc's guilt, followed by convincing proof when they looked into his auto as he told White to do if they wanted to know.

It is further contended that the look into defendant's car which the officers then took without having a search warrant was in violation of defendant's constitutional protection against unreasonable search and seizure, and the court therefore erroneously admitted, against defendant's objections, all evidence thus unlawfully obtained, citing *People* v. *DeLaMater,* 213 Mich. 167; *People* v. *LeVasseur,* 213 Mich. 177. In

those cases the searching officers invaded the premises of defendants by virtue of search warrants issued under the provisions of section 25 of Act No. 53, Pub. Acts 1919, which was held unconstitutional. No such situation or question is presented here. There was no invasion of the home or private premises by the officers who neither had nor assumed authority under any search warrant. The sacred attributes of the home or private premises have not yet been authoritatively ascribed to the automobile. No court has so far said that a man's touring car is his castle. The transaction took place on a public thoroughfare where defendant was found in an intoxicated condition in possession of an automobile which he said was his and when asked what was in it by the officer who arrested him, told him to look if he wanted to know. Aside from permission of the owner, it was not unlawful under the circumstances shown here for the officer to investigate and take charge of the property his prisoner had with him, and ascertain if it furnished evidence of his guilt. In *People* v. *Cona,* 180 Mich. 641, two revolvers taken from a sewing machine drawer in the house where defendant was arrested after shooting an officer were admitted in evidence, against his counsel's objection that they were seized in violation of defendant's constitutional protection against unlawful search and seizure. In sustaining their admission this court quoted with approval the following from *Smith* v. *Jerome,* 93 N. Y. Supp. 202 (47 Misc. Rep. 22):

"The police have the power and it is also their duty to search the person of one lawfully arrested, and also the room or place in which he is arrested, and also any other place to which they can get lawful access, for articles that may be used in evidence to prove the charge on which he is arrested."

Section 31 of Act No. 53, Pub. Acts 1919, amend-

ing the prohibition act of 1917, provides in part as follows:

"No property right of any kind shall exist in any intoxicating liquors had, kept, transported or possessed contrary to law or in or to any receptacle or container of any kind whatever in which said liquors may be found and all such are hereby declared forfeited to the State and shall be seized. Any person or persons in charge of said liquors or aiding in any manner in such violation shall forthwith be arrested and as soon as convenient taken before a magistrate. * * * Any sheriff or other peace officer may arrest without a warrant any person violating this act in the presence of such officer. * * * Such officers upon making such arrest may seize all evidence of the commission of such violation." * * *

No question is raised but that after White arrested defendant, late in the evening of January 21st, on a highway near Michigan Center, and took charge of the latter's car with its contents, proper legal proceedings followed with all convenient speed. The trial court committed no error in overruling defendant's objections to admission of the evidence complained of.

This is in no sense a case of over-zealous officers arbitrarily and upon mere venture searching an automobile in hope of finding intoxicating liquors in it with no previous knowledge of incriminating facts, and afterward claiming to justify·arrest and prosecution by proof of finding liquor during such search. Here there was reasonable ground, probable cause and previously apparent facts authorizing defendant's arrest and taking charge of the incriminating evidence in his possession. The consistent, unadorned and plainly told tale by witnesses of the facts relating to this transaction in the sequence they occurred stood undisputed, directly or circumstantially, with no contradicting evidence raising questions of fact in the

case.   It was the right of the trial court to instruct the jury that under the law as applied to undisputed facts disclosed by the evidence it was their duty to find defendant guilty, "unless the jury for some reason apparent on the trial is not able to believe the witnesses," and to admonish them as to their plain duty in the premises.   While so admonishing the court emphasized by reiteration that the court could not and did not direct a verdict of guilty but it was the right and duty of the jury to determine and say whether defendant was guilty or not guilty under one or both counts.   There was no direction of a verdict or coercion violating defendant's constitutional right to trial by jury.   It is true there was some intimation of opinion in the instructions given, but it was rather in the nature of an admonition that the undisputed and consistent testimony of unimpeached witnesses should not be lightly disregarded through whim or prejudice, or without some good reason apparent on the trial. The court did not relieve the jury of responsibility by assuming to direct a verdict, but plainly advised it was for them and not the court to determine and declare whether the accused was or was not guilty. They retired in charge of an officer to deliberate together, and after being absent for a time returned and reported as the result of their deliberations a verdict of guilty.   In *People* v. *Neumann*, 85 Mich. 98, where a verdict of guilty by direction of the court was sustained, it is said:

"But in this State, where a judge has directed a verdict of guilty, and the jury have followed such direction, and the facts are admitted or undisputed, and the only question is one of law, applied to such facts, a new trial will not be granted, if the judge was right in his application of the law.   No injustice can be done the accused in such case, as it is not to be presumed that a jury will find in opposition to the law from mere whim, caprice or prejudice, although they may have the right to do so."

The judge was right in his application of the law in this case and we find no occasion to disturb the verdict. The case will be remanded with authority to proceed to judgment thereon.

CLARK, SHARPE, and MOORE, JJ., concurred with STEERE, J.

WIEST, J. (*concurring*). I concur in affirming the conviction, but justify the search of the automobile without warrant and the seizure of the liquor found therein solely on the ground of permission granted by the accused.

FELLOWS, C. J., and BIRD, J., concurred with WIEST, J.

The late Justice STONE took no part in this decision.