## HUBERT NOTT v. STATE.

No. A-9720. Nov. 13, 1940.

(107 P. 2d 366.)

Mac Q. Williamson, Atty. Gen., Jess L. Pullen, Asst. Atty. Gen., and Phil E. Daugherty, Asst. Co. Atty., of Oklahoma City, for the State.

Glen O. Morris, of Oklahoma City, for defendant.

BAREFOOT, J.  Defendant was charged in the court of common pleas of Oklahoma county with the crime of unlawful possession of 54 pints of tax paid whisky; was tried, convicted and sentenced to pay a fine of $75 and serve 45 days in jail, and has appealed.

But one question is presented by this appeal, and that is that the court erred in overruling defendant's motion to quash and suppress the evidence as set forth in said motion, to wit:

"1.  That said evidence is inadmissible for the reason there was no search warrant for the obtaining of said evidence, as in such cases made and provided by law.

"2.  That said search and seizure violates the defendant's constitutional rights.

"3. That said evidence is inadmissible as against this defendant because said search and seizure of said evidence was illegal, void and without authority of law."

A jury was waived by defendant and the case was tried by the court. The evidence revealed that three police officers, J. M. Swofford, J. M. Mabee and J. G. McGuffin, were in the vicinity of the "Katy" depot in Oklahoma City on the night of December 9, 1938, about 8 o'clock, and they saw an automobile in which defendant was seated parked near the depot; that Officer Swofford approached the car and the other officers started in pursuit of some unknown person who escaped. Officer Swofford, on walking up to the car where defendant was parked, engaged him in conversation and saw 54 pint packages of intoxicating liquor lying on the floor of defendant's car. It was wrapped in brown paper such as is often used in the wrapping of intoxicating liquor. He asked the defendant how much there was of it, and he replied, "Something over a case." He immediately arrested defendant and he was taken to jail, and the charges of this case were the outgrowth of this arrest.

On cross-examination the officer testified he did not have a search warrant at the time the liquor was found and defendant was arrested; that he was acquainted with defendant and that they had a "pick-up" for him "concerning some stolen cars" in Kansas, but that he did not talk to him about the Kansas matter until he was booked at the jail. He did, however, testify that this was his reason for starting toward the car of defendant. He also testified that the 54 pints of whisky were wrapped in packages when he saw them on the floor.

Deputy Sheriff Ross Pierce testified as to the police officers turning over to the sheriff's office 54 pints of tax-paid liquor, and it was identified as the liquor found in

the possession of defendant, and the same was introduced in evidence for the inspection of the court.

Defendant took the witness stand in his own behalf and admitted he was parked in the car at the "Katy" depot as stated by the officers and that it was his car and was his whisky. He testified that the officer opened the door of the car and "looked down at some packages I had on the floor boards and said, "Well, I guess I will take you on down' "; that he did not give him permission to open the car door and that he did not tell the officer he had whisky in the car and that he was not served with a search warrant. On cross-examination defendant testified that he was in the whisky business and named the different brands that he sold; that he had personally wrapped the packages that were in his car, and that he had stuck it with gummed tape and had written certain identification marks on the packages so he could distinguish the kind of liquor it contained by the brand thereon.

It will at once be observed that there is a conflict in the evidence of the officer and that of the defendant as to whether the door of the car was opened prior to the seeing of the whisky, and to the statement made by defendant as to there being whisky in the car at the time the officer approached the same. There being a conflict in this evidence, it was a question of fact for the court to decide, a jury having been waived, as to who spoke the truth. This court under many decisions heretofore rendered has announced the rule that it will not set aside a judgment and sentence where there is a conflict in the evidence and the judgment and sentence is sustained by the evidence of the state.

It is contended by defendant in his brief that:

"Your writer contends that the officer violated defendant's constitutional rights when he first started toward

defendant's car with the intention of searching said automobile and obtaining evidence from the defendant without first knowing that a misdemeanor was being committed by the defendant."

Many decisions have been rendered by this court upon the question of the right to search without the necessity of a search warrant, and especially with reference to the right to search an automobile. It is also true that an examination of these cases reveals that certain isolated statements made therein are in conflict with each other, and for this reason we deem it advisable at this time to review some of these decisions so that it may be known what the view of the court as it is now constituted is upon this question.

This court has always been zealous to guard the constitutional rights of the citizens of this state in the protection of their homes and property from unreasonable search and seizure. This right is guaranteed by the Bill of Rights and Constitution of this state, Okla. St. Ann. art. 2, § 30, and the United States, Const. Amend. 4.

The following citations are a few of the decisions of this court exemplifying this position: Gore v. State, 24 Okla. Cr. 394, 218 P. 545; Denton v. State, 62 Okla. Cr. 8, 70 P. 2d 135; McHenry v. State, 61 Okla. Cr. 450, 69 P. 2d 90; Skelton v. State, 67 Okla. Cr. 215, 93 P. 2d 543. But at the same time we do not believe that a narrow, technical construction should be placed upon these sacred provisions of the Constitution, which were adopted to protect the rights of the good citizens of this state, so as to shield the citizen who has so far forgot his citizenship to attempt to use his home or his property for the purpose of using it to violate the laws of his country. Handley v. State, 65 Okla. Cr. 268, 85 P. 2d 436; Willard v. State, 66 Okla. Cr. 344, 92 P. 2d 600; Denton v. State, 62 Okla. Cr.

8, 70 P. 2d 135; Newton v. State, 61 Okla. Cr. 237, 71 P. 2d 122; Rickman v. State, 70 Okla. Cr. 355, 106 P. 2d 280.

We desire to refer to some of the later decisions of this court which have given special attention to the search of automobiles, and especially with reference to the right of search by officers where a crime has been committed in their presence, and the right to arrest or search without the necessity of a search warrant. We call attention to the case of Barfield v. State, 68 Okla. Cr. 455, 99 P. 2d 544, 546. The facts in this case were very similar to the case at bar. Two state highway patrolmen were traveling along highway No. 33 in Tulsa county. They passed defendant, who was out of his car fixing a tire. They stopped and asked what the trouble was. Defendant informed them he had a flat and was fixing a tire. They noticed a cardboard carton beside the car that was labeled "John Paul Jones Whisky". They asked the defendant whose whisky it was, and he said it was his. They asked him if that was all he had, and he said he had another carton up in front. The officers looked in the back of the car and saw several cases of whisky there. Defendant was arrested and charges filed. Defendant raised the question that the evidence was insufficient to convict and that the court erred in refusing motion to suppress evidence by reason of the fact that officers did not have a search warrant. The court held there was no error by the court, stating:

"Whether search of, and seizure from, an automobile upon a highway or other public place, without a search warrant, is reasonable is in its final analysis to be determined as a judicial question, in view of all the circumstances under which it is made.

"The constitutional provision against unreasonable searches and seizures does not preclude the making of a seizure, without a warrant previously procured, of intoxi-

cating liquor, where there is no need of a search for the liquor because the liquor is fully disclosed to the eye. Matthews v. State, 67 Okla. Cr. 203, 93 P. 2d 549.

"An offense is committed or attempted 'in the presence of an officer', within meaning of the statute providing that a peace officer may, without a warrant, arrest a person for a public offense, committed or attempted in his presence, where such officer is apprised by any of his senses that a misdemeanor is being committed by the person arrested prior to the arrest.

"In the instant case the facts and circumstances as testified to by the officers were sufficient to warrant them in believing that intoxicating liquor was in the carton beside the automobile, and this was a sufficient showing of an offense committed in the presence of the officers, and their testimony is to the effect that defendant admitted that the automobile contained other cartons of whisky that belonged to him."

We have quoted fully from the above case because of the close proximity of facts in that case and the case at bar. We also call attention to the case of Matthews v. State, 67 Okla. Cr. 203, 93 P. 2d 549, 554, cited in above case. In that case the police officers of the city of Enid by custom checked all cars parked on the streets of Enid between the hours of 10 and 11 o'clock each night to see if they were locked or had articles of value that might be stolen. They encountered defendant's car, which was locked. The officers saw a carton on the floor of the car labeled, "Paul Jones Whisky", and two or three other cartons beside it and saw a bottle in the car. The car was taken to the police station, and by using a wire, the door was opened and they found four quarts containing liquor. The defendant afterwards appeared at the station disclaiming ownership of whisky, but gave the officers the keys to the car and they unlocked the trunk and found five or six bottles of "Crab Orchard Whisky". A motion

to suppress the evidence by reason of failure to have a search warrant was overruled, and Presiding Judge Doyle, after review of cases with reference to the right of officer to search an automobile without having a search warrant, said:

"In the case at bar, the undisputed facts and circumstances as testified to by the officers, were sufficient to warrant them in believing that intoxicating liquor was in the cartons and bottle lying on the floor of the automobile, and this was a sufficient showing of an offense committed in the presence of the officers, and the defendant admitted, while their investigation was in progress, that the trunk on the car contained whisky that belonged to him. The admissions against interest made by the defendant were conclusive as to his guilt of the offense charged.

"In view of the time, place, and all the circumstances under which this seizure was made, we are of the opinion there was no violation of the constitutional provision forbidding unreasonable searches and seizures."

In the case of People v. Case, 220 Mich. 379, 190 N. W. 289, 292, 27 A. L. R. 686, the court, in describing the automobile as an instrument to avoid the detection of crime and as an aid to the criminal, said:

"The automobile is a swift and powerful vehicle of recent development, which has multiplied by quantity production and taken possession of our highways in battalions, until the slower, animal-drawn vehicles, with their easily noted individuality, are rare. Constructed as covered vehicles to standard form in immense quantities, and with a capacity for speed rivaling express trains, they furnish for successful commission of crime a disguising means of silent approach and swift escape unknown in the history of the world before their advent. The question of their police control and reasonable search on highways or other public places is a serious question far deeper and broader than their use in so-called 'bootlegging' or 'rum running,' which in itself is no small matter. While a possession in

the sense of private ownership, they are but a vehicle constructed for travel and transportation on highways. Their active use is not in homes nor on private premises, the privacy of which the law especially guards from search and seizure without process. The baffling extent to which they are successfully utilized to facilitate commission of crime of all degrees, from those against morality, chastity, and decency to robbery, rape, burglary, and murder, is a matter of common knowledge. Upon that problem a condition and not a theory confronts proper administration of our criminal laws. Whether search of and seizure from an automobile upon a highway or other public place without a search warrant is unreasonable is in its final analysis to be determined as a judicial question in view of all the circumstances under which it is made."

Other recent cases decided by this court are the following: Coburn v. State, 70 Okla. Cr. 329, 106 P. 2d 533; Arnold v. State, 70 Okla. Cr. 203, 105 P. 2d 556; Key v. State, 69 Okla. Cr. 71, 100 P. 2d 291; Brumley v. State, 69 Okla. Cr. 122, 100 P. 2d 465; Morris v. State, 66 Okla. Cr. 358, 92 P. 2d 603—dissenting opinion; Morris v. State, 66 Okla. Cr. 384, 92 P. 2d 609, also a dissenting opinion; Skinner v. State, 65 Okla. Cr. 371 87 P. 2d 341; McAfee v. State, 65 Okla. Cr. 65, 82 P. 2d 1006; Boardwine v. State, 64 Okla. Cr. 49, 76 P. 2d 1081; Dean v. State, 63 Okla. Cr. 385, 75 P. 2d 900.

We desire to refer to three decisions of this court, viz., Black v. State, 63 Okla. Cr. 317, 74 P. 2d 1172; Morris v. State, 66 Okla. Cr. 384, 92 P. 2d 609; Morris v. State, 66 Okla. Cr. 358, 92 P. 2d 603. With reference to the Black Case, we are not holding that the facts in that case justified the officer in making the search for the reason that the defendant was not in a public place at the time the search was made, but the language used in that opinion when it states: "They did not have a warrant for the arrest of the defendant or to search his car, and when they left

the road where they were driving, and drove out toward the defendant's car, they began to and were committing, so far as the defendant was concerned, an unlawful search and seizure," is not approved. In the other two cases a dissenting opinion was given by the writer of this opinion. I am still of the opinion that the facts in those cases justified the search without the necessity of a search warrant.

Cases from other jurisdictions which have dealt with the question of the right of search of automobiles without the necessity of a search warrant are as follows: Lambert v. United States, 9 Cir., 282 F. 413; United States v. Hilsinger, D. C., 284 F. 585; United States v. Rembert, D. C., 284 F. 996; Bell v. United States, 5 Cir., 285 F. 145; Houck v. State, 106 Ohio St. 195, 140 N. E. 112; Royce v. Com., 194 Ky. 480, 239 S. W. 795; People v. Chyc, 219 Mich. 273, 189 N. W. 70; Patrick v. Com., 199 Ky. 83, 250 S. W. 507; People v. De Cesare, 220 Mich. 417, 190 N. W. 302; State v. Kanellos, 122 S. C. 351, 115 S. E. 636; Husty v. United States, 282 U. S. 694, 51 S. Ct. 240, 75 L. Ed. 629, 74 A. L. R. 1407.

In the Brumley Case, supra, the court says:

"Counsel for defendants in his brief states that: 'The search was commenced at the time the officer started in his car to overtake the defendants' car and stop it for the purpose of obtaining evidence of a violation of the prohibitory laws, and it was commenced wholly on suspicion, with only a faint hope of obtaining evidence. Being unlawful in its inception the entire search was illegal, and, the evidence obtained thereby was inadmissible against the defendants.' "

Judge Doyle in answering this contention said:

"Upon the record before us we think that the contention made is wholly without merit. An offense is committed or attempted 'in the presence of an officer,' within the meaning of the statute, providing that a peace officer

may, without a warrant, arrest a person for a public offense committed, or attempted in his presence where such officer is apprised by any of his senses that a misdemeanor is being committed by the person arrested prior to the arrest. Section 2780, Sts. 1931, 22 Okla. St. Ann. § 196."

The facts in this case were that the officers started in pursuit of defendant's car and while so in pursuit of said car, the defendants threw two or three sacks of whisky from the car. When the car was searched after defendants were arrested, there was no whisky in the car, but the sacks were found containing broken bottles and full bottles containing whisky. The decision in this case is contrary to the statements made in the Black Case hereinbefore cited.

The statement heretofore referred to in the opinion with reference to the automobile's use for the purpose of escaping detection of crime is highly applicable to the violation of the liquor laws of this state, and while proper protection of the rights of the citizen of this state who is not a violator of the law is proper and just, we can see no valid reason why this court should resort to hairsplitting distinctions and technicalities in protecting the violator of the law who openly and notoriously uses his property, and especially his automobile, for a violation of the law of the land. We do not think that because an officer of the law walks toward the parked automobile of a defendant, that he thereby commits an unlawful act, and that when he arrives there he sees with his own eyes a violation of the law in his very presence, that he does not have the right to arrest the party whom he sees violating the law, and after such arrest, search the person and property of the defendant. To so hold, in our opinion, is throwing a cloak of protection around the defendant who violates the law to which he is not entitled. The decisions in the cases of Barfield v. State and Matthews v. State, supra, are di-

rectly in point upon this issue, as are the other cases heretofore cited.

In the case at bar the defendant admits that he was the owner of the car and the owner of the 54 pints of tax paid whisky; that he was engaged in the sale of whisky, and that he had wrapped and marked each package so he could identify the same for the purpose of sale. The officer approached the car in which defendant was sitting for the purpose of taking defendant to the police station that he might be questioned with reference to stolen automobiles in the State of Kansas. The authorities had a pickup order for him. When the officer approached the car, he saw 54 packages of whisky, each wrapped separately in brown paper, in the bottom of the car. When asked by the officer how much he had, he replied, "Something over a case." Certainly this officer, whose duty it was to enforce the law, was justified under these facts in arresting the defendant without the necessity of having a search warrant.

The judgment of the court of common pleas of Oklahoma county is therefore affirmed.

DOYLE, P. J., and JONES, J., concur.