KENNETH F. SLEEPER v. STATE.

No. A-9763.    Jan. 15, 1941.
(109 P. 2d 520.)

Adams & Barnes, of Guthrie, for defendant.

Mac Q. Williamson, Atty. Gen., and Hugh J. Adams, Co. Atty., of Guthrie, for the State.

BAREFOOT, P. J. Defendant was charged in the county court of Logan county with the crime of unlawfully transporting "certain intoxicating liquor, to wit: four hundred and twenty-six (426) pints of whisky," was tried, convicted and sentenced by the court to pay a fine of $250 and serve 90 days in the county jail, and has appealed.

For reversal of this case it is contended:

(1) That the court erred in overruling the motion of the defendant to suppress the evidence.

(2) That the court erred in overruling the demurrer of the defendant to the evidence, and his motion for a directed verdict of acquittal.

(3) That the court erred in admitting certain evidence over the objection of the defendant.

(4) That there was a fatal variance between proof and the allegations of the information.

(5) That the court erred in giving instruction No. 5.

(6) That the court erred in overruling defendant's motion for new trial.

The first, second, third and sixth assignments of error may be considered together.

The facts in this case were, that defendant was apprehended by Glen Farquharson, the sheriff of Logan county, Andrew Jelsma, undersheriff, and W. T. Smith, field deputy, on the night of May 26, 1939, in the possession of an automobile loaded with whisky. There were two bottles of liquor in the front seat and three exposed quarts of liquor on top of the packages of liquor near the back seat, and 426 pints of tax-paid liquor between the front and back seat of the car. At the time of the arrest of the defendant, the sheriff and his deputies were traveling down U. S. Highway 77 a mile south of Guthrie. They observed a car with lights burning driving toward the highway. The lights on the car were suddenly extinguished. The sheriff drove his car directly in front of the car of the defendant, which was in a driveway a few feet off the public highway. The undersheriff and deputy both walked to the car of the defendant, who had turned on his lights. A part of the evidence of field deputy Smith was as follows:

"Q. The other car stopped and turned its lights on? A. Yes. Q. What did you do at that time? A. Got out of the sheriff's car and went over to this other car. * * * Q. What did you do at that time, or say? A. Well, I walked up to the window and saw the liquor in there. Q. Did you know who was sitting in the car yet? A. No. Q. Just walked up to the window and saw the liquor in there? A. Yes. * * * Q. Returning to the liquor you saw in the front seat, that was put up in the usual packages of six bottles was it? A. Yes. Q. I understand you to say that part of the wrapping on that package was torn, exposing two

bottles of it? A. Yes. Q. What could you see then? A. Saw the necks of two bottles and the seals. Q. And what did you see in the back seat? A. Well there was packages back there and three quart bottles that wasn't in a package laying loose on top. Q. What brand were those three quarts? A. Hiram Walker. Q. Put up in quarts? A. Yes. Q. Now, I understand your testimony to be that you saw three quart bottles of liquor lying there in the back seat and not in packages, then you saw the necks of two bottles and their seals in this torn package in the front seat? A. Yes. Q. Had you said anything to the defendant? A. No. Q. What did you do at that time? A. Opened the door and got in with him and told him we would have to go to town. Q. Now, in addition to the liquor which you plainly saw, did he also have liquor in packages? A. Yes. Q. Where was that placed? A. Most of it was in between the two seats from the floor on up. Q. How high were the packages stacked in the back between the seats? A. About level with the top. Q. Any whisky in the back seat? A. Not on the cushion. Q. The three quarts of Hiram Walker you saw were placed on top of the packages that were stacked on the floor in the back between the front and back seats? A. Yes. Q. Was there any one in the car other than Kenneth Sleeper? A. No. Q. There was light enough that you could plainly see the whisky bottles in both the front and back of the car? A. Yes. Q. Did the other officers approach the car at the same time? A. Just about. Q. Did they say anything to the defendant, or tell him he was under arrest before you got there? A. No. Q. You were the first one to get into the automobile? A. I believe so."

The undersheriff, Mr. Jelsma, testified to the same facts of the field deputy, and he further testified:

"Q. Did you see any whisky? A. I did. Q. What did you see? A. I saw whisky on the right-hand side in the seat and some whisky between the front seat and the back on the floor. Q. Are you familiar with the appearance of whisky? A. Yes. Q. Can you testify positively that you saw whisky when you approached that car? A. Yes, I can. Q. What kind did you see? A. Some loose quart bottles.

Q. Where were those loose quart bottles? A. Protruding up between the front and the back seat. Q. Was that covered by anything? A. It had a cover laying up on top but it wasn't spread out. Q. Were these three quarts under the cover or were they plain to be seen? A. Plain to be seen. Q. See them as you approached the car? A. Yes. Q. See any other whisky? A. Saw a package open on the front seat, all I could see of that was the neck and caps of a couple of bottles. Q. Were you familiar with the appearance of those wrappers on the packages? A. Yes. Q. You knew that to be such as the wrappers around package whisky bottles. A. Yes. Q. You also saw those packages as you approached the car? A. I did. Q. Before that they had informed the defendant he was under arrest? A. No. Bill was talking to him, I didn't say anything. Just as I approached the car he turned the lights on, I heard Fuzz mention my name. Q. You are referring to the defendant Kenneth F. Sleeper? A. Yes. Q. He mentioned your name? A. Yes. Q. Do you know whether he had any lights on the inside of the car? A. Dash light was on. Q. You testified that it was light enough you could plainly see three quart whisky bottles which were not covered? A. Yes. Q. Did you merely suspicion that there was whisky in the car or did you actually see the whisky? A. I actually saw the whisky."

This court has recently held in a number of cases that under circumstances similar to these the officer had the right to search an automobile without the necessity of having a search warrant. Elmer Young v. State, 71 Okla. Cr. 112, 108 P. 2d 1028; Nott v. State, 70 Okla. Cr. 432, 107 P. 2d 366; Barfield v. State, 68 Okla. Cr. 455, 99 P. 2d 544; Matthews v. State, 67 Okla. Cr. 203, 93 P. 2d 549; McAfee v. State, 65 Okla. Cr. 65, 82 P. 2d 1006; Boardwine v. State, 64 Okla. Cr. 49, 76 P. 2d 1081; Arnold v. State, 70 Okla. Cr. 203, 105 P. 2d 556; Brumley v. State, 69 Okla. Cr. 122, 100 P. 2d 465; Skinner v. State, 65 Okla. Cr. 371, 87 P. 2d 341.

It is strongly urged in the brief filed by defendant that the proof in this case shows that the automobile of defendant was located in a "private driveway," and for this reason a search of same could not be made by the officers without a search warrant. The defendant did not take the witness stand in this case. There was not a line of evidence that defendant himself lived on the premises where he was driving from to the highway, nor that he was in any way interested in the driveway. The evidence revealed that there was a "garage apartment" there. From the evidence the jury was justified and probably did draw the conclusion that this "garage apartment" was being used by defendant as a place of storage of intoxicating liquor, and that was where defendant had secured the liquor which was in his car. The fact that the defendant was in his car between 12 and 1 o'clock at night, and turned off the lights upon seeing the approach of the cars by the officers, and while approaching the highway, and other circumstances were such that justified the officers in the discharge of their duty to examine the car of the defendant, and upon such examination finding exposed bottles of intoxicating liquor upon the front seat of the car and upon the floor boards and 426 pints of liquor piled high between the front and back seat of the car certainly justified the officer in arresting defendant and searching the car.

In the recent case of Nott v. State, 70 Okla. Cr. 432, 107 P. 2d 366, we had occasion to quote from the case of People v. Case, 220 Mich. 379, 190 N. W. 289, 292, 27 A. L. R. 686, which has in plain language described the use of the modern automobile in assisting criminals to evade the law. It is not necessary for us to again quote the words of this decision. There is no reason for the courts of the country, in order to protect the rights of innocent persons in this day and age, to so technically construe the

law that it will protect those who use their property for the absolute violation of the law. We are called upon in this case to place a technical construction upon the evidence; not only this, but to disregard the evidence of the officers and find that it was impossible for them to see the bottles of liquor upon the front seat and on the floor board of the car, for the reason that the search was made in the nighttime. The officers testified positively that they did see it. The defendant did not take the witness stand, and produced no evidence. Why should the positive evidence of the officers be disregarded and not considered under such circumstances as appear here? We see no good reason therefor.

Counsel in their brief refer to the cases of Black v. State, 63 Okla. Cr. 317, 74 P. 2d 1172, and Bowdry v. State, 64 Okla. Cr. 86, 77 P. 2d 753. In the case of Nott v. State, 70 Okla. Cr. 432, 107 P. 2d 366, 370, supra, we had occasion to refer to the Black Case, and said:

"We desire to refer to three decisions of this court, viz., Black v. State, 63 Okla. Cr. 317, 74 P. 2d 1172; Morris v. State, 66 Okla. Cr. 384, 92 P. 2d 609; Morris v. State, 66 Okla. Cr. 358, 92 P. 2d 603. With reference to the Black Case, we are not holding that the facts in that case justified the officer in making the search for the reason that the defendant was not in a public place at the time the search was made, but the language used in that opinion when it states: 'They did not have a warrant for the arrest of the defendant or to search his car, and when they left the road where they were driving, and drove out toward the defendant's car, they began to and were committing, so far as the defendant was concerned, an unlawful search and seizure' is not approved. In the other two cases a dissenting opinion was given by the writer of this opinion. I am still of the opinion that the facts in those cases justified the search without the necessity of a search warrant."

There were some extenuating circumstances in the Bowdry Case, but it is doubtful if this case would be affirmed by the members of this court as now constituted. We are certain that it is not the law that an officer has not the right in the discharge of his duty to arrest one for a violation of the law in his presence upon the public highway, and he has the right to go upon the public highway and use his senses of sight and smell in making said arrests.

With reference to the fourth assignment of error, it is contended the evidence did not reveal that the car of defendant had moved, but was standing still at the time of the search, and therefore the proof did not show there was a transportation of the liquor as alleged in the information. This contention is contrary to the evidence. The sheriff of Logan county testified that he saw the car moving; that the lights were on at the time and that as he approached the car the lights were extinguished, and when the officers went toward the automobile of defendant, he again turned on the lights. The other officers testified to the same effect, both testifying that they saw the car moving toward the highway. The fact that the liquor was being conveyed as alleged in the information was sufficient under the law. See Thomas v. State, 27 Okla. Cr. 264, 226 P. 600, and Shirley v. State, 31 Okla. Cr. 174, 237 P. 627. These cases fully discuss what constitutes an illegal conveyance of intoxicating liquor. This court has held that the taking of liquor from one room to another room in the same building, or the taking of the liquor from one hand to the other, is not sufficient to convict under an allegation of conveyance, but that any actual conveyance within the terms and meaning of the law was sufficient to show that a conveyance was being made. De Graff v. State, 2 Okla. Cr. 519, 103 P. 538; and England v. State, 53 Okla. Cr. 142, 8 P. 2d 690.

144

It is next contended that the court erred in giving instruction No. 5, which was as follows:

"You are further instructed that if you find from the evidence in this case that the defendant did on or about the 26th day of May, 1939, or at any time within three years prior to the filing of the information in this case, which was on the 27th day of May, 1939, that the defendant Kenneth F. Sleeper, then and there being, did then and there willfully, unlawfully and wrongfully ship, convey and transport a certain quantity of intoxicating liquor, to wit: 426 pints of whisky or any portion thereof from a point unknown to the county attorney, to another point in Logan county, Oklahoma, to wit: approximately a half mile south of the city of Guthrie in Logan county, Oklahoma, on U. S. Highway 77, then you will find the defendant guilty of transporting intoxicating liquor and so show by your verdict. But, on the other hand, *if you find from a preponderance of the evidence that the state has failed to prove to your satisfaction beyond a reasonable doubt that the defendant did commit such crime, then you will resolve the doubt in favor of the defendant and acquit him.*"

It is the italicized part of the instruction to which objection is made. It is true that an instruction as to the preponderance of evidence has no place in the instructions of a criminal case. The law requires the state to prove the guilt of the defendant beyond a reasonable doubt, and certainly not by a preponderance of the evidence, as in civil cases. The expression used in the last part of the instruction is unique. The instruction does not say that the jury shall find the defendant guilty if they find "from a preponderance of the evidence," but says "that the state has failed to prove beyond a reasonable doubt." Under the decisions of this court from the earliest days of its existence, it has uniformly been held that instructions are to be examined in the light of the whole record. In construing Oklahoma Statutes 1931, section 3206, 22 Okla. St. Ann. § 1068, it has been uniformly held that a case will

not be reversed by reason of an error in an instruction unless the error was such that had "probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right," and that if, after an examination of the entire record, the guilt of the defendant was established to the extent that a retrial of the case would not change the result, the case would not be reversed. Thompson v. State, 6 Okla. Cr. 50, 117 P. 216; Hooper v. State, 7 Okla. Cr. 43, 121 P. 1087; West v. State, 13 Okla. Cr. 312, 164 P. 327, L. R. A. 1917E, 1129; Montgomery v. State, 19 Okla. Cr. 224, 199 P. 222; Holmes v. State, 18 Okla. Cr. 415, 195 P. 508; Quick v. State, 51 Okla. Cr. 121, 299 P. 242; Exline v. State, 48 Okla. Cr. 135, 289 P. 783; Cole v. State, 18 Okla. Cr. 430, 195 P. 901; Cowley v. State, 65 Okla. Cr. 479, 88 P. 2d 914; Williams v. State, 62 Okla. Cr. 394, 71 P. 2d 781; Janeway v. State, 62 Okla. Cr. 264, 71 P. 2d 130.

This rule should certainly apply to this case. No defense was made, and from the amount of liquor in defendant's possession, no defense could be made. A retrial of this case could only result in a conviction of defendant, and for this reason we are of the opinion that the error of this court in placing the last clause in instruction No. 5 should not cause a reversal of this case, and that this instruction should be read in the light of all the instructions given by the court, and especially of instruction No. 2, in which the court instructed the jury that the defendant was presumed to be innocent, and that this presumption abided with him until overcome by evidence "beyond a reasonable doubt," and that if the jury, after a consideration of all the evidence and instructions of the court, had "a reasonable doubt," that they should resolve such doubt in his favor and acquit him. This rule has been so well established in the law of this country and has been so well

understood, that this court has many times held that it was not necessary for the trial court to define the term "reasonable doubt" in instructing the jury, for the reason that jurors understood the expression so well that it was unnecessary to so instruct them. Cole v. State, 18 Okla. Cr. 430, 195 P. 901; McCarty v. State, 21 Okla. Cr. 365, 207 P. 1069.

Counsel for defendant, in anticipation of the position to be taken by the state in this case, cites the cases of Brown v. State, 14 Okla. Cr. 115, 167 P. 762; Price v. State, 1 Okla. Cr. 358, 98 P. 447; and Washmood v. United States, 10 Okla. Cr. 254, 136 P. 184, 186. We have given these cases careful consideration, and in our opinion the facts in those cases are not applicable to the facts in the case at bar. We shall not lengthen this opinion by referring to them, except to say that, in the Washmood Case, which was written by the writer of this opinion, who was appointed as a Special Judge to this court, there was before the court an instruction somewhat similar to the one here involved, or at least with reference to the question of "reasonable doubt." It was said in that case:

"It is contended by counsel for the defendant that this instruction was so worded that it deprived defendant of his right to be acquitted, if there was reasonable doubt in the minds of the jury as to his guilt. There can be no question but that there is some merit in the contention of counsel. This instruction as it is worded has a strong tendency to confuse the question of reasonable doubt, and to tell the jury that they might convict the defendant whether they believed him guilty beyond a reasonable doubt. The reasonable doubt part of the instruction seems to refer only to the jury believing that Ben Collins was murdered beyond a reasonable doubt, and not that the defendant committed the murder, or was present aiding and abetting therein, beyond a reasonable doubt. However, if this was the only error committed in this case, this court

would not reverse the case upon that ground, for the reason that in the last part of the instruction the court states that 'the evidence must not be susceptible of any other reasonable conclusion or explanation than that to a moral certainty said defendant, A. Washmood, is guilty as so charged.' We believe that the jury would have inferred from the last part of the charge that it was necessary to convict the defendant beyond a reasonable doubt; but, while we believe that the instruction is not worded as it should have been, yet this error alone would not be sufficient to reverse this cause."

Just so in this case we do not believe that the error of the court in giving instruction No. 5 was such that the jury were misled in believing they could find the defendant guilty unless they found from the evidence that he was guilty beyond a reasonable doubt, and as stated in that case, whatever error it was, we are of the opinion that it did not affect the substantial or fundamental rights of the defendant, and did not so influence the jury as to work any prejudice against him under the evidence and circumstances of this case.

However, we have come to the conclusion that in view of the giving of this instruction, justice would be subserved by modifying the judgment and sentence from a fine of $250 and 90 days in jail to a fine of $250 and 45 days in jail, and as so modified, the judgment and sentence of the county court of Logan county is affirmed.

DOYLE and JONES, JJ., concur.