**Bill MERWIN, Plaintiff in Error,**

v.

**The STATE of Oklahoma, Defendant in Error.**

**No. A-12027.**

Criminal Court of Appeals of Oklahoma.

Sept. 22, 1954.

Rehearing Denied Nov. 10, 1954.

210

McMahan, Loofbourrow & Loofbourrow, Boise City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

POWELL, Presiding Judge.

Bill Merwin has appealed from a judgment entered by the County Court of Cimarron County, where a jury was waived, finding him guilty of the crime of unlawfully transporting intoxicating liquor, and fixing his punishment at a fine of $100 and sentencing him to 30 days confinement in the county jail.

The basis for appeal is the proposition that the evidence of the crime was obtained by an unlawful search and seizure.

The record discloses that prior to the case being called for trial counsel filed a motion to suppress the evidence on the grounds "that same was obtained by means of an unreasonable and unlawful search of defendant's motor vehicle and in violation of his constitutional rights. That he was arrested by the officer for the violation of a minor traffic regulation, to wit: Driving his motor vehicle without a tail light, and there was no necessity for searching his motor vehicle for evidence that he was driving his motor vehicle without a tail light."

After hearing the testimony of one witness called by the defendant, to wit: the testimony of Kenneth K. Warner, Sheriff of Cimarron County, the court overruled the motion. Whereupon, the parties stipulated that the evidence heard in support of the motion to suppress might be considered as the evidence of the State on trial, and counsel for defendant then interposed a demurrer thereto, which was by the court overruled. Both sides rested and the court then entered judgment as heretofore recited.

■ In considering the evidence of Sheriff Warner offered by the defendant in support of defendant's motion to suppress, it should be kept in mind that the burden was on the accused to establish the illegality of the search and seizure. Wirth v. State, 79 Okl.Cr. 59, 151 P.2d 819; O'Dell v. State, 80 Okl.Cr. 194, 158 P.2d 180; Phinney v. State, 90 Okl.Cr. 21, 210 P.2d 205.

■ But it must further be kept in mind that the "probable cause rule", whereby officers acting upon a belief reasonably arising out of the circumstances known to searching officers, may search an automobile without a warrant, though followed in federal courts, is not applicable to prosecutions in state courts of Oklahoma. And while the rejection in 1930 in the case of Wallace v. State, 49 Okl.Cr. 281, 294 P. 198, was by a divided court, as was true in cases from the Supreme Court of the United States where the rule was developed and adopted, see citations in Brinegar v. State, Okl.Cr., 262 P.2d 464, still such rejection by this court has been over too long a period of time to be cast aside in the absence of compelling reasons, which we do not now find to exist. To fully appreciate the reasons for the rejection of the

probable cause rule, one should read the various cases on the subject cited in the Brinegar case, particularly the dissenting opinions in the cases cited from the Supreme Court of the United States.

Sheriff Warner testified, as partially summarized by the appellant [we quote from his brief]:

"That he had known the defendant for a number of years. That on September 29, 1953 he saw the defendant at the Texas-Oklahoma state line on Dalhart, Texas road and followed him into Boise City. That he stopped him at the railroad crossing near Boise City, Oklahoma, and arrested him for driving a motor vehicle without a tail light. That he was driving a Willys Coupe with a box on it. (This has been referred to as a jeep in defendant's motion to suppress.) He did not search his person, but did search his car. That he searched the back end. That he did not consider Mr. Merwin a dangerous man, or that he was armed. His purpose in searching him was that while following him he saw cases in the car and there was a quilt flopping over them. When he stopped him he looked back where he had seen the cases, and found some cases of whiskey. They were partly covered up, but there was one case on which he could see marked 'whiskey'.

"He was asked this question, and answered same as follows: 'Q. You couldn't tell what the contents of the box was? A. I can't see through the box no.'

"The witness then reluctantly admitted that he had been informed by telephone that someone had purchased whiskey at Dalhart, Texas, giving him the tag number and he went down to the state line checking on the tag.

"He further testified that he was not armed with a search warrant. That the informants said that it was possible that the party driving the motor vehicle with the given tag number might have a load of liquor. That he didn't have time to get a search warrant. He

drove 16 miles to the state line. He had time to make that drive. It was before 12 o'clock at night. He found the quantity of liquor, 24 pints, 48 half pints, 2 four-fifths and 12 four-fifths of wine. That the defendant asked him if he had the right to search and he said 'I think so'. The defendant then said OK. He went ahead and searched the vehicle."

The sheriff further testified that the boxes that he saw were cardboard boxes. It was not indicated that any of the boxes had been opened.

■ From the evidence it is clear that the sheriff of Cimarron county did not have authority to arrest and search defendant's motor vehicle simply because he had been advised that a car with a certain tag number had loaded up with liquor and was headed for Oklahoma. Such fact did not prevent him, however, from trying to locate the vehicle and following it to its destination, or the unloading point. With this information and other possible information that he might be able to obtain, he would be in a position to seek a search warrant.

■ Counsel for the defendant correctly points out that the fact that the sheriff in following the vehicle driven by the defendant discovered that a tail light was not burning and did arrest defendant for such traffic violation, but such arrest did not entitle or justify the search of the car. This principle of law was developed in Brinegar v. State, supra.

We further conclude that in as much as the sheriff, after the arrest of the defendant for the minor traffic violation, discovered that he knew the defendant and did not deem it necessary to search his person and the seat of his car for firearms, that the subsequent search cannot be justified as for firearms, and there being no evidence that the defendant had the smell of alcohol on his breath and acted as if intoxicated, the search cannot be justified on the basis of search for evidence to support a charge of drunk driving.

Only one circumstance is disclosed by the record that could justify the search of defendant's vehicle in the absence of a search

warrant, and that is the testimony of the sheriff that as he followed the defendant's vehicle he noticed that a quilt which covered some cardboard boxes was flapping in the breeze and that he saw the word "whiskey" labeled on one of the boxes, and after he stopped and arrested the defendant for the traffic violation he looked back and the covering was up so that he could still see a box labeled "whiskey". He could not see the contents. We have recited the circumstances that prompted the officer in waiting for this car.

Under the situation, was the sheriff authorized to search defendant's vehicle for intoxicating liquor?

In view of the fact that this court has rejected the probable cause rule, was the sheriff, by reason of information that he had received by telephone that the car with the tag number this particular car was found to have, was loaded with intoxicating liquor, connected up with the label "whiskey" on one of the boxes that he could see, justify the conclusion that the box in fact contained liquor? In fact, would any information that cast suspicion that the driver of the car was committing any crime less than a felony, justify a search in the absence of a search warrant?

If, as we have already pointed out, officers may not upon a belief reasonably arising out of circumstances known to such searching officers, that contraband is contained in or is being transported in a motor vehicle, search the same without the authority of a warrant, what additional circumstances added may justify an arrest and search? That is, what added circumstances must exist before it could be said that an officer " 'knows of the act constituting the offense' " as specified in Bates v. State, Okl. Cr., 251 P.2d 810, 813, and cases cited?

The defendant contends that the case of Washington v. State, 60 Okl.Cr. 316, 64 P.2d 926, 927 settles the issues raised here.

In the Washington case officers were stationed along a highway near the city limits of Durant for the purpose of inspecting lights and brakes on all cars, by order of the Governor. As stated in that opinion:

"These officers had no search warrant. They did not know the defendant and had no warrant for his arrest. They had no reason to suspect that he had violated any law when they apprehended him on the highway. The only basis for his arrest was that one of the officers testified that as his car passed him he saw the turtle-back of the car fly up and saw a box setting in the back marked whisky. This was about 9 o'clock at night, on November 14th, and while the car was running about 15 or 20 miles an hour. He, at no time, saw any whisky, but was merely suspicious that the box contained whisky."

The case was reversed.

The writer of the Washington opinion cited Murray v. State, 51 Okl.Cr. 44, 299 P. 506, where it is said:

"Search of a car without a warrant of arrest, or search warrant, or knowledge by the officers that it contained intoxicating liquor, or without sufficient knowledge to cause an ordinarily prudent person to act, is illegal, and the evidence so obtained should have been excluded upon timely objection."

Just what was meant by the expression *"or without sufficient knowledge to cause an ordinarily prudent person to act"* is not clear from a study of that case alone.

Did such expression have any bearing in an analysis of the facts in that case, or was it just an expression added without due consideration?

Obviously, from the facts recited in the Washington case, about the only difference between that case and the present case is that in the within case Sheriff Warner, the arresting officer, in addition to seeing a cardboard box labeled "whiskey", and which was apparently sealed, and which was loaded in the open back end of a car that he had been informed by telephone or radio by some one he knew that a described car with a certain tag number had loaded up with intoxicating liquor at a point in a "wet" county in Texas and was headed for Oklahoma along a certain high-

way. So that in addition to seeing the labeled box, the sheriff found the described car with the specified tag on the specified highway at the time it was supposed to be there.

In Lawson v. State, 84 Okl.Cr. 396, 182 P.2d 786, an officer was near the defendant's home and saw a truck drive up to the home, and there was delivered to the defendant a cardboard box which the defendant took in his arms and started walking with it. The officer saw that the top was off, but from the point where he commenced walking toward the defendant to investigate the contents of the box, which was where the search commenced, Hoppes v. State, 70 Okl.Cr. 179, 105 P.2d 433, he could not see the contents nor any label on the box, but on getting closer he did see bottles in the box and thought that he saw the word "whiskey" on the box. The examination that followed developed that the bottles actually contained intoxicating liquor, and the box was actually labeled "whiskey".

The conviction in that case was reversed on the ground that the search was simply made on suspicion.

In the case of Griffin v. State, 90 Okl. Cr. 90, 210 P.2d 671, 673, the essential facts developed brought out that two officers saw one Dale Wolfe drive by. They knew him as a retailer of whiskey and followed him in their car to see what he might do. They saw him stop his car around the block. The officers stopped and watched and saw a known wholesale whiskey dealer speed by them and stop parallel with the Wolfe car. The officers drove up at a high speed and one of them testified that he saw the defendant Griffin handing a sealed cardboard box to Wolfe and that the box was labeled "whiskey" and he could also read the word "distillery" on the cardboard box.

Based on the Washington and Lawson cases, and the fact that this court had rejected the probable cause rule, the writer here prepared the original opinion reversing the case based on the thought that the officers could not know what was in the box; that it might have contained groceries or some other lawful commodity. But on rehearing the majority of the court decided that the Washington and Lawson cases were not controlling, but that the case was distinguishable from those cases. In what particulars was left to the interested for comparison of facts. But the court said:

"The question presented to this Court is whether the fact that the officers saw two known whiskey dealers passing a sealed carton from one to the other with the distillery name together with the word 'whiskey' stamped thereon, was a violation of the prohibitory liquor laws in the presence of the officers, so as to justify the arrest of the defendant, and the search of his automobile, and seizure of the whiskey in question."

It was further pointed out that our constitution, art. II, § 30, prohibits only "unreasonable searches and seizures". The conclusion was reached that "the fact that in the instant case the whiskey was in the manufacturer's carton which was sealed and unbroken, and had thereon the name "whiskey" with the stamp of the distillery, creates a presumption that the carton contained the produce named on its side."

To support the conclusion reached the court cites Farmer v. State, 86 Okl.Cr. 308, 192 P.2d 716; Davenport v. State, 71 Okl. Cr. 91, 108 P.2d 549; Matthews v. State, 67 Okl.Cr. 203, 93 P.2d 549; Young v. State, 71 Okl.Cr. 112, 108 P.2d 1028; Franklin v. State, 71 Okl.Cr. 115, 109 P.2d 239, and Nott v. State, 70 Okl.Cr. 432, 107 P.2d 366.

Concerning the applicability of the Davenport case cited, the court said:

"The defendant drove his automobile into a public parking place. He left the car and went across the street to a restaurant. Certain policemen who had seen him drive into the parking lot, went to the automobile, looked through a glass window into the car and saw several packages wrapped in brown paper. No whiskey was visible, but on each of the packages were written the initials of the kind of liquor each contained, such as J. E. P.

for James E. Pepper, etc. The officers recognized the packages as being lugs of whiskey; although, no bottles of whiskey were in view. The search and seizure was sustained on the ground that a crime was committed in the presence of the officers, which authorized arrest of defendant and search of his automobile."

Also, in the Nott case, supra [70 Okl.Cr. 432, 107 P.2d 368], Judge Barefoot said with reference to art. II, § 30, of the Bill of Rights:

"We do not believe that a narrow, technical construction should be placed upon these sacred provisions of the Constitution which were adopted to protect the rights of the good citizens of this State, so as to shield the citizen who has so far forgot his citizenship as to attempt to use his home or his property for the purpose of using it to violate the laws of his country."

■ In the Griffin case the pertinent points of law announced and that must govern the within case are found in paragraphs 4 and 5 of the syllabus of the opinion, as follows:

"4. Because of the stringent laws against misbranding of merchandise and counterfeiting of labels (Tit. 78 O.S.1941) there is a legal presumption that a package contains the merchandise labeled thereon, where the package is a sealed, unopened pasteboard carton, in the same condition as it came from the manufacturer of the product.

"5. Where policemen while patrolling city streets see the automobiles of two recognized whiskey dealers stopped side by side on city street, and one whiskey dealer passes to the other an unopened, sealed, pasteboard carton, containing the words 'whiskey'

and the name of the distillery stamped thereon in large recognizable letters, a crime is committed in the presence of the officers which authorized the arrest of the whiskey dealer, and the search of his automobile without a warrant."

■ The lesson derived from a comparison of the facts in the within case with that of Washington and Lawson, and with that of Griffin and the cases cited therein, is that while as in the Washington case, where officer sees cartons that might raise a suspicion that such cartons contain intoxicating liquor by reason of label, that such would not per se justify a search, but where in addition the officer had probable cause reasonably arising out of additional circumstances known to the officer, he might be justified in searching an automobile without a warrant. But whether a search is or is not unreasonable within the meaning of the constitutional provisions, Okl.Const. art. II, § 30, forbidding unreasonable searches and seizures, is a judicial question to be determined in each case in view of the facts and circumstances under which the search and seizure is made. Hoppes v. State, supra, Blair v. State, 75 Okl.Cr. 265, 130 P.2d 545; Griffin v. State, supra.

■ We therefore conclude that in view of the information possessed by the officer at the time he viewed the cardboard box labeled "whiskey", which box so far as the record shows, was as it came from the factory, justified the officer in arresting the defendant for the misdemeanor of possession of intoxicating liquor, or transportation thereof, one or both.

For the reasons stated, the judgment of the county court of Cimarron County must be, and the same is affirmed.

JONES and BRETT, JJ., concur.